UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| LISA GOMLEY, | Case No. 1:13-cv-00420-BLW |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| CROSSMARK, INC., | |
| Defendant. | |

## INTRODUCTION

The Court has before it Defendant's Motion for Partial Summary Judgment (Dkt. 42) and Plaintiff's Renewed Motion for Equitable Tolling (Dkt. 43). The motions were argued on March 31, 2015, and taken under advisement. For the reasons explained below, the Court will grant in part and deny in part Defendant's Motion for Partial Summary Judgment. The Court will grant Plaintiff's Renewed Motion for Equitable Tolling.

## BACKGROUND

Plaintiff Lisa Gomley was a named plaintiff in a collective action brought against her former employer, defendant Crossmark, Inc., alleging violations of the wage and overtime provisions in the Fair Labor Standards Act ("FLSA"). The action was originally

filed on February 9, 2011 in the District Court for the Eastern District of Pennsylvania. During an oral argument on plaintiffs' collective action certification motion, the Pennsylvania court tolled the claim from February 9, 2011. The Pennsylvania court ultimately denied certification on November 14, 2012, but the presiding judge did not set a deadline for individual plaintiffs to refile their individual complaints.

On January 24, 2013, 71 days after the court denied certification, Gomley filed her individual complaint in Pennsylvania, alleging the same FLSA violations. Additionally, Gomley filed a motion to equitably toll the statute of limitations from the date of the filing of her opt-in form, February 9, 2011. The Pennsylvania court transferred Gomley's action to this Court, and denied the motion for equitable tolling without prejudice.

Gomley has since renewed her motion for equitable tolling and amended her complaint. She seeks damages for unpaid wages, as well as liquidated damages. Crossmark asks for summary judgment on the following claims: (1) morning commute time; (2) evening commute time; (3) unpaid straight-time wages (gap time); and (4) liquidated damages. Crossmark also argues that Gomley's claims are partially barred by the statute of limitations.

**LEGAL STANDARD**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

**1.    Summary Judgment**

**a) Morning Commute Time**

Crossmark argues that Gomley cannot recover for her morning commute time between her home and her work because Crossmark did not control her activities, which allowed Gomley to use that time for her own purposes. *Def.'s Reply in Supp. of Mot.*, Dkt. 49, at 2. Crossmark further argues that it did not require Gomley to perform her administrative duties immediately before her morning commute, relieving Crossmark from any duty to pay Gomley for morning commute time. *Def.'s Mem. in Supp. of Mot.*, Dkt. 42, Ex. 1, at 7.

Congress created the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) (internal citation and quotations omitted). "The FLSA's minimum wage and overtime provisions are central among the protections the Act affords to workers." *Id.*

Generally, ordinary home-to-work travel is not compensable under the FLSA. *See Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1054 (9th Cir. 2010). The Portal-to-Portal Act, an amendment to the FLSA, clarifies this general rule by relieving an employer from compensating an employee for travel "to and from the actual place of performance of the principal activity or activities which such employee is employed to perform," and for "activities which are preliminary to or postliminary to" the employee's principal activities. 29 U.S.C. § 254(a)(1)-(2). Accordingly, an employee shall only be compensated for off-the-clock activities which are related to her "principal activities" for her employer, provided that these activities are not *de minimis*. *See Rutti,* 596 F.3d at 1055. Thus, if off-the-clock administrative tasks are non-*de minimis*, and constitute principal activities, the tasks are part of the workday pursuant to the continuous workday doctrine, making morning commute time after completing such tasks compensable. *See Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011).

The definition of "principal activities" warrants a liberal construction, and includes activities "performed as part of the regular work of the employees in the ordinary course of business." *Id.* at 1056 (internal citation and quotations omitted). Specifically, the Supreme Court has held that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a principal activity.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005). Moreover, in determining whether an activity is a principal activity, the court considers "the extent to which the work impacts the employee's freedom to engage in other activities." *Id.*

Here, Crossmark required Gomley to perform certain tasks each morning. She was required to check work e-mails, sync a handheld device provided by Crossmark to verify the stores she would travel to that day, organize store folders, and load her car before she attended her first appointment. These activities constitute non-*de minimis*, principal activities. Indeed, such activities are integral and indispensable to Gomley's job. Gomley simply could not attend her first appointment without first completing these tasks. And while Gomley may have had time to occasionally stop for a coffee during her commute to her first appointment after completing these tasks, her freedom to engage in non-work activities was limited by a scheduled first appointment of the day.

Crossmark nevertheless argues that it did not require Gomley to perform these tasks immediately before her morning commute to her first job site. Instead, Crossmark suggests that Gomley could have performed these tasks the night before work, several hours before she had to leave for her first appointment, or possibly in her parked car in front of her first job site. This would have given Gomley free time between when she performed the tasks and her first appointment of the day.

In support of this argument, Crossmark cites to 29 C.F.R. § 785.16, which provides that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purpose are not hours worked." 29 C.F.R. § 785.16. Thus, if Crossmark did not require Gomley to perform administrative tasks immediately before her morning commute, then she was "completely relieved from duty" until she arrived at her first appointment of the day.

Crossmark further points to three separate court orders – all of which granted the defendant's motions for summary judgment on the morning commute time claims for other individuals originally part of Gomley's proposed class. *Garcia v. Crossmark, Inc.*, No. 13-CV-0693-MV-LAM (D. N.M. Mar. 26, 2015); *Bettger v. Crossmark, Inc.*, No. 1:13-CV-2030, 2014 WL 2738536 (M.D. Pa. June 17, 2014); *Roath v. Crossmark, Inc.*, 4:13-CV-00758-BCW (W.D. Mo. Sept. 26, 2014). However, in two of those cases, the court found insufficient evidence that Crossmark required the plaintiff to complete administrative tasks immediately before leaving home for the morning commute. *Bettger*, No. 1:13-CV-2030, 2014 WL 2738536 at *6; *Roath*, 4:13-CV-00758-BCW at *8. In the third, the court did not indicate whether sufficient evidence existed. *Garcia*, No. 13-CV-0693-MV-LAM. But, in precluding compensation for morning commute time, the court in *Garcia* cited to a Second Circuit case which "explain[ed] that because the 'record indicates only that it might have been necessary to perform certain activities in the morning . . .,' commuting time was not compensable under the FLSA." *Garcia*, No. 13-CV-0693-MV-LAM at *5 (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 360-61 (2nd Cir. 2011). The court in *Kuebel* affirmed the defendant's motion for summary judgment because the record lacked any evidence that the plaintiff "was required to perform [certain activities] immediately before leaving home. *Kuebel*, 643 F.3d at 361.

Moreover, another case which was originally part of Gomley's same proposed collective action suggests that it is inappropriate to grant summary judgment when a plaintiff provides evidence that she was required to perform administrative tasks

immediately before starting her morning commute. *Bowman v. Crossmark, Inc.*, No. 3:09-CV-16, 2012 WL 2597875, at *8 (E.D. Tenn. July 5, 2012). In *Bowman*, the court noted that the plaintiff "submitted a declaration in which she [made] statements concerning written and verbal instructions given to her concerning when she was to perform administrative tasks and how quickly." *Id.* Such evidence created an issue of fact that she was required to perform such tasks immediately before her morning commute, which led the court to deny summary judgment.

    Gomley's case is more akin to *Bowman*. In her deposition, Gomley states that Crossmark instructed employees to sync their handhelds and check their e-mails before commuting to the first store in the morning. *Gomley Dep.*, Dkt. 42, Ex. 12, at 87, 88 ("Before we left the house, we had to sync our handheld, we had to check email, we had to make sure we had everything with us. Yes, it was before we left the house."; "We were instructed to sync our handheld before we left, and check our emails before we left to see if there were any issues."). Gomley's testimony creates at least a genuine dispute of material fact about whether Crossmark required Gomley to perform administrative tasks immediately before leaving for her morning commute. In fact, Crossmark's suggestion that Gomley could have done her tasks the night before, in the middle of the night or very early morning hours, or possibly in her car, is neither supported by the record before the Court, nor does it seem particularly realistic. Accordingly, the Court will deny summary judgment on the morning commute time.

The Court recognizes that Gomley conceded that she could have accomplished her administrative tasks from a location other than her home, and in fact did so when she was out of town. But there is simply no evidence that another option was plausible when she began her day at home. There is no evidence that Gomley had, or was required to have, a wi-fi enabled car. And beginning her commute, then stopping at a library, coffee shop, café, or other place with wi-fi or the other necessary technology to sync her device and check e-mails seems unrealistic.

### b) Evening Commute Time

Gomley asks for leave to amend her complaint to add a claim for evening commute time. Generally, a motion to amend is analyzed under Rule 15(a). Rule 15(a) is a liberal standard and leave to amend "shall be freely given when justice so requires." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006). However, where a party seeks to amend a pleading after the deadline to amend pleadings set forth in the court's scheduling order has passed, Rule 16(b)'s "good cause" standard applies. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Id.* "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* The existence of prejudice to the opposing party may supply additional reasons to deny a motion, but the real focus of the inquiry is upon the moving party's reasons for seeking the amendment. *Id.* "If that party was not diligent, the inquiry should end." *Id.*

Here, the Court's CMO set September 4, 2014 as the deadline to amend pleadings. Not until her February 9, 2015 response to Crossmark's Motion for Summary Judgment did Gomley ask for leave to amend her complaint to add the evening commute time claim. Gomley waited until her response brief to ask for the amendment even though Crossmark stated at her December 8, 2014 deposition that she had not pled such a claim. *Gomley Dep.*, Dkt. 42, Ex. 12, at 190.[1] In fact, Gomley filed her first Amended Complaint just 9 days after her deposition, but still failed to specifically plead facts for an evening commute time claim. Under these circumstances, the Court finds that Gomley was not diligent in timely asserting an evening commute time claim.

Moreover, to ask Crossmark to address a claim first asserted in a response to Crossmark's motion for summary judgment would likely create another round of briefing, which would prejudice Crossmark. Although unnecessary to the Court's determination, such prejudice supplies additional reasons to deny the motion. *Id.*

---

[1] Crossmark represented to the Court that it "did not ask Ms. Gomley about [evening commute time]" in her deposition, so it would be unfair and prejudicial to allow Gomley to now plead evening commute time. *Def.'s Reply in Supp. of Mot.*, Dkt. 49, at 6. The deposition transcript appears to indicate otherwise. *Gomley Dep.*, Dkt. 42, Ex. 12, at 190-96, 238 ("I can't find anywhere in your lawsuit where you allege that you were not paid for drive time in the evening; that is, driving from your last store of the day to your home. Are you telling us now that that's part of your lawsuit, too?"; "How much time in the evening, if any, do you believe that you underreported or didn't report for performing administrative tasks?"; "Are you claiming that you had drive time on the way back from your last store visit that you did not report?"). Still, had the evening commute time claim been specifically pled, Crossmark may have questioned Gomley in more depth about the issue. Under a Rule 15 analysis, this would have made the motion to amend a closer call. However, as explained above, under Rule 16 the real issue is Gomley's diligence.

Finally, to the degree Gomley claims that she did not need to specifically plead evening commute time – she only needed to state facts that demonstrate she was not paid overtime for all hours worked over forty hours – the Court disagrees. In her complaint, Gomley stated specific facts for a morning commute time claim, which put Crossmark on notice that she was asserting that claim. *Pl.'s Am. Comp.*, Dkt. 40, ¶ 24 ("Defendant never paid Plaintiff wages for the time she spent driving to her first assignment of the day unless the drive exceeded forty (40) miles or took more than one hour"). But she did not plead specific facts for an evening commute time claim. Instead, she merely alleged that "Defendant did not fully compensate her for all the time she spent working on [] end-of-day reporting tasks." *Pl.'s Am. Comp.*, Dkt. 40, ¶ 25. This allegation seeks recovery for performing tasks – not recovery for commute time. Asking Crossmark to assume that Gomley was asserting an evening commute time claim, even though she specifically asserted facts about a morning commute claim but not an evening commute claim, is not proper notice. Accordingly, to the extent Crossmark seeks summary judgment on evening commute time claim, the Court will grant the motion. Moreover, the Court will deny Gomley leave to amend her complaint to add such a claim.

### c) Gap Time Wages

"Gap time" refers to "uncompensated hours worked that fall between the minimum wage and the overtime provisions of the FLSA." *Adair*, 185 F.3d at 1062. Essentially, gap time "is non-overtime hours worked for which an employee is not compensated." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3rd Cir. 2014). Some

courts have distinguished between two types of gap time – pure gap time and overtime gap time. *See, e.g.*, *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1280 (4th Cir. 1996). As explained below, Gomley is not entitled to recover either pure gap time or overtime gap time.

Regarding the first type of gap time, the prevailing view is that "pure gap time claims – straight time wages for unpaid work during pay periods without overtime – are not cognizable under the FLSA, which requires payment of minimum wages and overtime wages only." *Id.* at 244. *See also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201-02. (2nd Cir. 2013) ("the FLSA does not provide a cause of action for unpaid gap time"); *Monahan*, 95 F.3d at 1280 ("there is no cause of action under the FLSA for pure gap time when there is no evidence of a minimum wage or maximum hour violation by the employer"); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986). The Ninth Circuit has not directly addressed pure gap time, but this Court agrees with the clear weight of authority. An employee may not recover pure gap time wages under FLSA.

The more difficult question is whether the FLSA allows recovery for overtime gap time. The two circuits which have addressed the issue – the Second and the Fourth – reached different conclusions. In *Monahan*, the Fourth Circuit held that while pure gap time is always precluded under the FLSA, an employee may recover overtime gap time if an employee exceeds the overtime threshold and the employment contract does not

expressly or implicitly compensate an employee for non-overtime hours. *Monahan*, 95 F.3d at 1273.

The Second Circuit, on the other hand, held that an employee may not bring a gap-time claim under the FLSA "even when an employee has worked overtime." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 116 (2nd Cir. 2013). The Second Circuit reasoned, "the text of FLSA requires only payment of minimum wages and overtime wages. It simply does not consider or afford a recovery for gap-time hours." *Id. Lundy* expressly rejected *Monahan*, finding the case unpersuasive because it relied on interpretive and "unreasoned" guidance from the Department of Labor. *Id.* at 116-17. Specifically, *Lundy* critiqued 29 C.F.R. § 778.315. *Id.* In discussing the FLSA pay requirement for time-and-a-half, § 778.315 states that "[t]his extra compensation for the excess hours of overtime under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) . . . has been paid." 29 C.F.R. § 778.315. *Lundy* noted that this section "suggests that an employer could violate FLSA by failing to compensate an employee for gap time worked when the employee also works overtime; but the Department of Labor provides no statutory support or reasoned explanation for this interpretation." *Id.* at 117. Finding no persuasive support to rule otherwise, and rejecting *Monahan*, the court in *Lundy* affirmed the dismissal of the plaintiff's overtime gap time claim. *Id.*

The Court agrees with the Second Circuit's ruling. The plain language of the FLSA does not encompass gap time pay – whether it be pure gap time or overtime gap time. As such, the Court will grant summary judgment on this issue. In so holding, the Court notes that Gomley is not without a remedy. Virtually every state provides some type of statutory relief, including some form of liquidated damages, for employees who are not paid the wages to which they are contractually entitled. *See. e.g.*, IDAHO CODE § 45-615 (authorizing a civil suit to recover unpaid wages and permitting the recovery of costs, attorney's fees and treble damages).

### d) Liquidated Damages

Crossmark requests summary judgment on Gomley's claim for liquidated damages, suggesting that liquidated damages may only be awarded for unpaid overtime wages. The Court's decision to grant summary judgment to Crossmark on gap time wage claims renders the liquidated damages issue moot because any recovery by Gomley will be limited to unpaid overtime wages, for which liquidated damages are available.

### 2. Equitable Tolling of the Statute of Limitations

The statute of limitations for an FLSA action is two years, unless the employee can show a willful violation, in which case the limitation period is extended to three years. 29 U.S.C. § 255(a). Crossmark argues that because of the statute of limitations, Gomley may only recover for claims arising from pay periods on or after April 21, 2008 (with a showing of willfulness) and April 21, 2009 (without a showing of willfulness). As

explained below, the Court concludes that statute of limitations is equitably tolled in this case, and will therefore deny Crossmark's motion for summary judgment on this issue.

Gomley filed a motion for equitable tolling, arguing that the statute of limitations should be equitably tolled from November 14, 2012, when the Pennsylvania court denied certification of the collective action, through January 24, 2013, when Gomley filed her individual action. A statute of limitations may be equitably tolled when (1) the plaintiff is prevented from asserting a claim by the defendant's wrongful conduct or (2) extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time. *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (citation omitted). The doctrine of equitable tolling "is extended sparingly and only where claimants exercise diligence in preserving their legal rights." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

The 71-day window between denial of class certification and the filing of Gomley's individual action is a reasonable amount of time for Gomley to re-file her complaint. Moreover, in denying class certification, the Pennsylvania court did not set a specific deadline for the proposed class members to file their individual complaints. The lack of a deadline put Gomley in a difficult situation – was she expected to re-file that day, the next day, the next week, etc.? Under these circumstances, 71 days was reasonable, and the Court finds that Gomley exercised diligence in preserving her legal rights. Accordingly, the Court will grant Gomley's motion to equitably toll the statute of

limitations from November 14, 2012, through January 24, 2013. Thus, Gomley's claims are not barred by the statute of limitations.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion for Partial Summary Judgment (Dkt. 42) is **GRANTED** in part and **DENIED** in part.

2. Plaintiff's Renewed Motion for Equitable Tolling (Dkt. 43) is **GRANTED**.

DATED: April 22, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court